IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Carole Burt Stukes, | ) | Civil Action No. 8:14-cv-01305-RBH-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

On July 26, 2011, Plaintiff filed an application for DIB alleging an onset of disability date of January 1, 2009.  [R. 159–65.]  Plaintiff alleged disability based on the following: osteoarthritis, bursitis, anxiety attacks, memory loss, torn left shoulder muscle, depression,

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Plaintiff also filed an application for Supplemental Security Income ("SSI"), and it was denied because her income exceeded Title XVI FBR and OSS.  [R. 166–70, 177.] This appeal does not relate to Plaintiff's claim for SSI.

fatigue, neuropathy of the neck/upper shoulders, neuropathy in toes/balls of feet, concentration problems, mortons neuroma in right foot, and cough/asthma. [R. 50.] Plaintiff, through her attorney, subsequently amended her onset date to January 22, 2009. [R. 13.] Plaintiff's claim for DIB was denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 61–62, 77–78.] Plaintiff requested a hearing before an administrative law judge ("ALJ"), and, on December 4, 2012, ALJ Nicole S. Forbes-Schmitt conducted a de novo hearing on Plaintiff's DIB claim. [R. 30–48.]

The ALJ issued a decision on January 4, 2013, finding Plaintiff not disabled. [R. 13–23.] At Step 1,[3] the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on June 30, 2013, and had not engaged in substantial gainful activity since January 22, 2009, the amended alleged onset date. [R. 15, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: fibromyalgia, right hip spur, right knee spur, and left shoulder tear with bursitis. [R. 15, Finding 3.] The ALJ also noted Plaintiff had the following non-severe impairments: osteoarthritis and carpal tunnel syndrome of the bilateral hands; ocular/basilar migraine headaches; right ankle tendonitis; hypertension and asthma; and a non-medically determinable impairment of neuropathy. [R. 15–17.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 18, Finding 4.]

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Before addressing Step 4, Plaintiff's ability to perform his past relevant work ("PRW"), the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours in an 8-hour day, and stand and walk for 6 hours in an 8-hour day, with normal breaks. However, the claimant can never climb ladders, ropes or scaffolds, and she can only occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. Additionally, the claimant can only occasionally use the left, non-dominant upper extremity for pushing, pulling and overhead reaching.

[R. 19, Finding 5.] Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff could perform her PRW as a collections representative and receptionist/runner. [R. 22, Finding 6.] Accordingly, the ALJ found Plaintiff had not been under a disability as defined by the Act from January 22, 2009, through the date of the decision. [R. 23, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined. [R. 1–6.] Plaintiff filed this action for judicial review on April 10, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary because the RFC analysis is not supported by "the proper legal framework." [Doc. 20 at 9–12.] Plaintiff also contends the ALJ's credibility analysis is inconsistent with SSR 96-7p [*id.* at 12–15], and that the ALJ improperly drew an negative inference from the lack of treating physician opinion evidence imposing restrictions on Plaintiff [*id.* at 15–16].

3

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence, and Plaintiff failed to meet her burden of proving that she could not return to her PRW. [Doc. 21.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result

4

as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence

or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

and that there is good cause for the failure to incorporate such
evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. §

405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by

amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of

Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,
2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107,
2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.
2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health &
Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme
Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.
*See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply
the more stringent *Borders* inquiry.

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699

8

F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.   *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.   *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical

and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that,

when evaluating the effect of a number of impairments on a disability claimant, "the

[Commissioner] must consider the combined effect of a claimant's impairments and not

fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings

as to the effect of a combination of impairments when determining whether an individual

is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or

her evaluation of the combined effects of the impairments."). If the ALJ finds a

combination of impairments to be severe, "the combined impact of the impairments shall

be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals

the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without

considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the

statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65

F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the

claimant's residual functional capacity[5] with the physical and mental demands of the kind

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

10

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v.*

13

*Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the

14

claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and

West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:

...

**FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**RFC Determination**

Although Plaintiff raises numerous allegations of error by the ALJ, each challenge concerns the ALJ's RFC analysis.  Specifically, Plaintiff alleges the ALJ failed to consider medical records submitted after the hearing related to Plaintiff's surgical shoulder repair in September of 2012 and, thus, incorrectly concluded that Plaintiff's treating physicians have not recommended surgical treatment for her joint pain.  [Doc. 20 at 10–11.]  Plaintiff also takes issue with the ALJ's conclusion, in light of late-submitted records, that Plaintiff's treatment was "relatively infrequent and conservative" and that there was "very little documentary evidence showing the [Plaintiff] sought any treatment for her pain symptoms." [*Id*. at 11–12.]  With respect to Plaintiff's credibility, Plaintiff contends the ALJ's findings are flawed based on "the ALJ's erroneous conclusions about [Plaintiff's] shoulder, which turned out to be more medically serious than the ALJ understood based on her lay assessment of available records." [*Id*. at 14.]  Plaintiff also contends the ALJ improperly found Plaintiff's

17

activities of daily living were out of sync with her alleged limitations.  [*Id*. at 15.]  Lastly, Plaintiff argues that it was unfair for the ALJ to conclude that "given the [Plaintiff's] allegations of totally disabling symptoms, one might expect to see some indication in the record of restrictions placed on the claimant by the claimant's treating physicians" because RFC findings are not typically offered by physicians during the course of routine treatment, particularly in light of a plaintiff who is in her sixties, collecting early retirement, and not looking to reenter the workforce.  [*Id*. at 16.]  On the other hand, the Commissioner contends that the ALJ applied the proper legal standards and that substantial evidence supports the ALJ's RFC determination.  The Court agrees with the Commissioner.

### *ALJ's Findings related to RFC and Pain*

As noted above, the ALJ was required to evaluate Plaintiff's alleged pain by following a two-step process.  First, the ALJ had to determine whether Plaintiff produced medical evidence of a medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by her.  Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.  [R. 22.]  At the second step, the ALJ was required to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limited Plaintiff's functioning.  After careful consideration of the evidence, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible to the extent they were inconsistent with the RFC assessment.  [R. 22.]

18

The ALJ explained her consideration of the evidence as follows:

> While the claimant's testimony has been carefully considered, the medical evidence of record does not support her allegations of disabling symptoms. Specifically, in terms of her fibromyalgia, in February and June 2010, the claimant reported she was doing well with Cymbalta.  March 2011 treatment notes stated that her fibromyalgia was stable.  While August 2011 treatment notes reflect that she exhibited 18/18 tender points, her fibromyalgia was assessed as stable. (Exhibit 5F). Moreover, in October 2011, the consultative examiner Temisan L. Etikerentse, M.D., noted the claimant demonstrated only tender points above and below the diaphragm but otherwise exhibited full range of motion of all joints with no edema and ambulated with a normal gait without an assistive device.  Dr. Etikerentse also noted the claimant demonstrated full strength of the upper and lower extremities. (Exhibit 17F).

> In terms of her right hip pain, there is very little evidence showing she has sought treatment for her hip pain since her amended alleged onset date. An October 2011 x-ray of the right hip showed an acetabular spur but otherwise revealed preserved hip joint space. (Exhibit 16F).  Additionally, upon consultative examination in October 2011, Dr. Etikerentse noted the claimant exhibited full range of motion of the right hip, full strength of the lower extremities and ambulated with a normal gait. She also noted the claimant could heel/toe and tandem walk and squat. (Exhibit 17F).

> Regarding her right knee pain, April 2009 treatment notes reflect that the claimant's knee pain was stable, and her knees were normal upon examination. Follow-up treatment notes from Low Country Rheumatology reflect no objective abnormalities of her right knee, and the claimant's knees were noted to be within normal limits in August 2011. (Exhibit 5F). An October 2011 x-ray of the right knee showed only small patellar insertion spurs but was otherwise unremarkable. (Exhibit 16F). Additionally, in October 2011, Dr. Etikerentse noted the claimant demonstrated full range of motion of the right knee, full strength of the right lower extremity, a normal gait, and the ability to squat. (Exhibit 17F). While the undersigned has considered the claimant's fibromyalgia and right hip and knee pain in limiting the amount the claimant can lift, carry, climb, stoop, kneel, crouch and crawl, the relatively infrequent and conservative treatment of her pain and the

19

relatively mild objective findings indicate that she has no greater limitations than those set forth above.

In terms of the claimant's left shoulder pain, a May 2011 MRI showed a minimally retracted supraspinatus left tendon tear with infrapinatus and subscapularis tendinopathy, and she was assessed with a small rotator cuff tear with bursitis at that time. However, May 2011 treatment notes reflect that she exhibited (5-/5) strength with abduction and flexion of the left upper extremity, only mild tenderness over the acromioclavicular (AC) joint, and full range of motion of the left upper extremity, albeit with pain with movement over shoulder height. The claimant was administered a left shoulder steroid injection in May 2011 and referred to physical therapy at that time. Subsequent treatment notes from July 2011 reflect that the claimant reported improvement of her left shoulder pain, and David H. Jaskwhich, M.D., noted the claimant exhibited good range of motion of the left shoulder with only minimal pain at that time. (Exhibit 4F).

In September 2011, although Douglas Gleaton, M.D., noted the claimant exhibited reduced range of motion, stability and strength of the left shoulder, he did not document the degree to which her range of motion or strength was limited. (Exhibit 15F). Additionally, upon consultative examination in October 2011, Dr. Etikerentse noted the claimant complained of left shoulder pain but exhibited full range of motion of the left shoulder and full strength of the left upper extremity.  Dr. Etikerentse assessed the claimant with only a "history of" tendinopathy and partial tear of the left shoulder. (Exhibit 17F). The medical record does not reflect any significant abnormalities in subsequent treatment notes. While the undersigned has considered the claimant's left shoulder tear/bursitis in limiting the amount the claimant can lift, carry, perform postural activities and push, pull and overhead reach with the left upper extremity, there are no objective findings showing the claimant's left shoulder tear and bursitis impose greater limitations than those set forth above.

The medical record is devoid of any evidence showing the claimant's treating physicians have recommended surgical treatment for the claimant's joint pain since her amended alleged onset date, and there is very little documentary evidence showing the claimant sought any treatment for her

pain symptoms in 2012, suggesting they are generally more
tolerable than she has alleged.

[R. 20–21.]  The ALJ also noted that Plaintiff "underwent left carpal tunnel release in 2008

which relieved her carpal tunnel pain, and she denied any problems of the right hand."  [R.

20.]  The ALJ further indicated that Plaintiff "testified she underwent left rotator cuff surgery

in September 2012, which she stated helped to improve her pain but she maintained she

has not regained full range of motion of her shoulder and has difficulty reaching to the left."

[*Id*.]  Additionally, the ALJ noted that Plaintiff denied any problems of her right upper

extremity, which is her dominant extremity. [*Id*.]

### *Discussion*

The Administration has provided a definition of RFC and explained what a RFC

assessment accomplishes:

> RFC is what an individual can still do despite his or her
> limitations. RFC is an administrative assessment of the extent
> to which an individual's medically determinable impairment(s),
> including any related symptoms, such as pain, may cause
> physical or mental limitations or restrictions that may affect his
> or her capacity to do work-related physical and mental
> activities. Ordinarily, RFC is the individual's maximum
> remaining ability to do sustained work activities in an ordinary
> work setting on a regular and continuing basis, and the RFC
> assessment must include a discussion of the individual's
> abilities on that basis. A "regular and continuing basis" means
> 8 hours a day, for 5 days a week, or an equivalent work
> schedule....

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and

footnotes omitted).  The RFC assessment must first identify the claimant's functional

limitations or restrictions and assess his or her work-related abilities on a

function-by-function basis, including the functions listed in paragraphs (b), (c), and (d) of

20 C.F.R. §§ 404.1545 and 416.945. *See id.*    Only after this identification and

assessment may RFC be expressed in terms of the exertional levels of work: sedentary,

light, medium, heavy, and very heavy. *Id.*

Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to
> medically determinable impairments. It is incorrect to find that
> [a claimant] has limitations or restrictions beyond those
> caused by his or her medical impairment(s) including any
> related symptoms, such as pain, due to factors such as age
> or height, or whether the [claimant] had ever engaged in
> certain activities in his or her past relevant work (e.g., lifting
> heavy weights.) Age and body habitus (i.e., natural body build,
> physique, constitution, size, and weight, insofar as they are
> unrelated to the [claimant]'s medically determinable
> impairment(s) and related symptoms) are not factors in
> assessing RFC ....

*Id*. at 34,476.  To assess a claimant's RFC, the ALJ must consider all relevant evidence

in the record, including medical history, medical signs, laboratory findings, lay evidence,

and medical source statements. *Id*. at 34,477.  SSR 96–8p specifically states, "[t]he RFC

assessment must always consider and address medical source opinions. If the RFC

assessment conflicts with an opinion from a medical source, the adjudicator must explain

why the opinion was not adopted."  *Id*. at 34,478.

The ALJ must also consider the degree to which any non-exertional limitations may

further erode Plaintiff's ability to work. The Administration addressed the role of

nonexertional limitations in an RFC assessment as follows:

> Nonexertional capacity considers all work-related limitations
> and restrictions that do not depend on [a claimant]'s physical
> strength; i.e., all physical limitations and restrictions that are
> not reflected in the seven strength demands, and mental
> limitations and restrictions. It assesses [a claimant]'s abilities
> to perform physical activities such as postural (e.g., stooping,

climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision). In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).

As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions .... Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

SSR 96–8p, 61 Fed.Reg. at 34,476.

Plaintiff takes issue with the ALJ's failure to consider medical records reflecting Plaintiff's surgery on her left shoulder in September 2012. The treatment notes from the procedure indicate that Plaintiff underwent arthroscopy with extensive debridement of tendon, bond, bursa and labrum; and anthroscopic rotator cuff repair of the left shoulder. [R. 471.] Treatment notes on follow up dated September 28, 2012, indicated Plaintiff would be in a sling for at least another month but could remove it for general range of motion at home. [R. 473.] She was also given a home exercise and stretching program and was to return in three to four weeks. [*Id*.] While the ALJ did not specifically refer to these treatment notes, the ALJ did consider Plaintiff's left rotator cuff surgery from September 2012. [R. 20.] For example, the ALJ referred to and considered Plaintiff's testimony that the surgery helped to improve her pain but she had not regained full range of motion of her shoulder and had difficulty reaching to the left. [*See* R. 20, 38–39.] And,

there is no requirement that the ALJ specifically refer to every piece of evidence. *See Reid v. Comm'r*, 769 F.3d 861, 865 (4th Cir. 2014).

Additionally, at the time of the hearing, Plaintiff had not been released from her doctor for physical therapy, but she did not testify to any limitations other than a limited range of motion and problems reaching with her left hand. [R. 39.] In light of the evidence and testimony presented, the ALJ expressly considered Plaintiff's left shoulder tear/bursitis and limited the amount Plaintiff could lift, carry, perform postural activities and push, pull and overhead reach with the left upper extremity. Upon review, the Court finds Plaintiff has failed to explain how the ALJ's failure to mention Plaintiff's surgery records requires reconsideration of the ALJ's RFC findings. Plaintiff provides no basis for finding that Plaintiff's clinical findings in the record support restrictions which exceed those expressed in the RFC, and the Court declines to re-weigh the evidence. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.1986) (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1973) (holding even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

With respect to Plaintiff's credibility, the Court finds Plaintiff's argument that the ALJ's findings are flawed based on "the ALJ's erroneous conclusions about [Plaintiff's] shoulder" is without merit. The ALJ explained her assessment of Plaintiff's credibility based on the record evidence as follows:

24

In assessing the claimant's credibility, the undersigned also notes that the claimant has reported she performs some household chores, occasionally goes to restaurants, visits her mother who resides in a nursing home, visits her sister-in-law, occasionally cares for her grandson, prepares simple meals, shops, drives, uses the computer, and reads. (Exhibit 11F). The extent of her daily activities suggests that her pain symptoms, alleged fatigue, and mental disorders are not significantly limiting and support the finding that she retains the ability to perform a reduced range of light work.

. . .

In sum, the undersigned has considered the claimant's fibromyalgia, right hip and knee spurs, and left shoulder tear with bursitis in limiting the amount the claimant can lift, carry, and perform postural activities. Additionally, in light of her left shoulder tear and bursitis and the evidence that she occasionally exhibited reduced range of motion of the left upper extremity, the undersigned finds she could only occasionally use the left upper extremity for pushing, pulling and overhead reaching. However, due to aforementioned inconsistencies, particularly the relatively infrequent and conservative treatment of her symptoms and the absence of any significant objective abnormalities since her amended alleged onset date, the undersigned cannot find the claimant's allegation that she is incapable of all work activity to be credible.

[R. 21–22.]  Contrary to Plaintiff's suggestion, the Court cannot find that the ALJ ignored limitations associated with Plaintiff's left shoulder impairment.  In light of her left shoulder tear and bursitis, and her reduced range of motion of the left upper extremity, the ALJ expressly limited Plaintiff to only occasionally using the left upper extremity for pushing, pulling and overhead reaching.  Again, Plaintiff has failed to demonstrate how the consideration of treatment notes from Plaintiff's surgery would have resulted in more stringent limitations in the RFC.

Plaintiff also takes issue with the ALJ's finding that Plaintiff's activities of daily living were out of sync with her alleged limitations.  In analyzing Plaintiff's mental impairment, the ALJ found that Plaintiff had no functional limitations in her activities of daily living.  [R. 17.]  The ALJ noted that in her August 2011 functional report, Plaintiff indicated she "can independently care for matters of personal hygiene, prepare simple meals, drive and perform light household chores, such as vacuuming, cleaning the bathrooms, doing laundry, mopping and washing dishes.  She also reported she shops for groceries." [*Id*.] Plaintiff did not challenge these findings.  Pursuant to SSR 96–7p, it is appropriate for an ALJ to consider a Plaintiff's activities of daily living in assessing credibility.  Plaintiff's argument on this issue suggests that the ALJ's decision was based solely on her consideration of Plaintiff's activities of daily living.  That is not the case.  In discounting her credibility, the ALJ considered Plaintiff's activities of daily living, but also considered inconsistencies between her testimony and the record as well as the lack of objective medical evidence to support the alleged severity of her impairments.  The ALJ found no opinions by any of Plaintiff's treating physicians that were inconsistent with the RFC assessment; gave considerable weight to the 2011 opinion of Dr. Temisan Etikerentse ("Dr. Etikerentse") that Plaintiff did not have any significant deformity from a functional standpoint secondary to her osteoarthritis; and gave considerable weight to the assessments of the state agency medical consultants, finding them generally consistent with the other evidence of record. [R. 21–22.]  The Court finds no error because the ALJ articulated specific and adequate reasons why she decided not to fully credit Plaintiff's testimony about pain, and the ALJ made a credibility determination based upon all the evidence in the record.

Lastly, the Plaintiff takes issue with the ALJ's acknowledgment that given Plaintiff's allegations of totally disabling symptoms, one might expect to see some indication in the record of restrictions placed on the claimant by the claimant's treating physicians. [R. 22.] Plaintiff seems to argue that, because of her age and the fact that she was nearing retirement, her treating physicians would not have made findings related to RFC. Plaintiff, however, provides no legal or factual basis for this proposition, and Plaintiff bears the burden of establishing her inability to work within the meaning of the Act. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). She must make a prima facie showing of disability by showing she is unable to return to her PRW. *Id*. Plaintiff has failed to meet that burden here. The Court finds the ALJ clearly developed and explained her RFC findings and her ultimate conclusion that Plaintiff could perform her PRW. Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.


July 21, 2015                           s/Jacquelyn D. Austin
Greenville, South Carolina              United States Magistrate Judge